UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT BOWLING GREEN
CIVIL ACTION NO. 1:08CV88-J

WILLIAM ANDY DURHAM                                                    PLAINTIFF

VS.

MICHAEL J. ASTRUE,
        Commissioner of Social Security                               DEFENDANT

<u>MEMORANDUM OPINION</u>

        Before the Court is the complaint of William Andy Durham ("Plaintiff" or "Claimant")

seeking judicial review of the final decision of the Commissioner pursuant to 42 U.S.C. Section

405(g).  After examining the administrative record ("Tr."), the arguments of the parties, and the

applicable authorities, the Court is of the opinion that the decision of the defendant Commissioner

should be affirmed.

<u>PROCEDURAL HISTORY</u>

        On March 18, 2003, Claimant filed application for disability insurance benefits, alleging that

he became disabled as of March 6, 2002.  The original administrative decision was that Mr. Durham

had no severe impairment.  After remand from this Court,  Administrative Law Judge Roger

Reynolds ("ALJ") determined that claimant's non-insulin dependent diabetes mellitus with early

neuropathy, status-post gunshot would to the right lower extremity; depression not otherwise

specified, hypertension, mild obesity, and degenerative disc disease of the lumbar spine with mild

bulges were severe impairments that prevented him from performing any of his past relevant work.

The ALJ further found that he retained the residual functional capacity to perform a limited range

of light and sedentary jobs that exist in significant numbers in the national economy.  This became

1

the final decision of the Defendant when the Appeals Council denied review.

## STANDARD OF REVIEW

The task of this Court on appellate review is to determine whether the administrative proceedings were flawed by any error of law, and to determine whether substantial evidence supports the factual determinations of the ALJ.  Elam v. Commissioner, 348 F.3d 124 (6th Cir. 2003). "Substantial evidence" exists if there is sufficient evidence from which reasonable minds could arrive at the challenged conclusion.  NLRB v. Columbian Enameling and Stamping Co., 306 U.S. 292 (1939); Foster v. Bowen, 853 F.2d 483 (6th Cir. 1988).  If the proceedings are without reversible error and if substantial evidence exists to support the challenged conclusions, this Court must affirm, regardless of whether the undersigned would have found the facts differently.

## ARGUMENTS ON THIS APPEAL

The disability determination process consists of five steps.  Wyatt v. Secretary, 974 F.2d 680 (6th Cir. 1992).  These steps are approached sequentially, and a finding at any step that is adverse to the claimant terminates the process:

1.  The claimant must not be engaged in substantial gainful activity.

2.  The alleged disabling impairment must be "severe," meaning that it significantly limits the individual's ability to do basic work activities necessary for most jobs, such as walking, standing, sitting, lifting, seeing, hearing and speaking.  20 CFR Section 416.921.

3.  If the claimant has a medical condition that meets or exceeds the impairments listed in Appendix 1 of 20 CFR Part 404, Subpart P of the regulations (often referred to as "the Listings"), the evaluation terminates and the claimant is conclusively presumed to be disabled.  Lankford v. Sullivan, 942 F.2d 301 (6th Cir. 1991).

2

4.  The claimant must be unable to do his or her past relevant work.

5.  If the claimant shows inability to do the past relevant work, the Commissioner must come forward with evidence to show that the claimant can still perform a significant number of jobs.  <u>Born v. Secretary</u>, 923 F.2d 1168 (6th Cir. 1990).

Plaintiff argues that the ALJ committed legal error in three respects.  First, he contends that the ALJ erred in failing to terminate the sequential evaluation at Step 3.  In the alternative, plaintiff argues that the ALJ erred at Step 5 by failing to accord the appropriate weight to the opinions of treating physicians as well as by failing to properly conduct a credibility evaluation with regard to non-medical evidence.

### THE "LISTINGS

At Step three of the sequential evaluation process, the inquiry is whether the claimant has a medical condition that meets or exceeds the impairments listed in Appendix 1 of 20 CFR Part 404, Subpart P of the regulations (often referred to as "the Listings").  If the plaintiff carries the burden of establishing  that s/he meets a Listing,  the evaluation terminates and the claimant is conclusively presumed to be disabled.  <u>Lankford v. Sullivan</u>, 942 F.2d 301 (6th Cir. 1991), <u>Burress v. Secretary</u>, 835 F.2d 139 (6th Cir. 1987).   Listings are to be interpreted very strictly, and the plaintiff must establish the existence of all elements of the Listing.  <u>Foster v. Halter</u>, 279 F.3d 348 (6th Cir. 2001),  <u>Hale v. Secretary</u>, 816 F.2d 1078 (6th Cir. 1987), <u>Dorton v. Heckler</u>, 789 F.2d 363, 367 (6th Cir. 1986).   To meet a listing, a claimant must present specific *medical evidence* to satisfy all of the Listing criteria.  20 C.F.R. Sec. 416.925.  That is, at Step Three, it is insufficient to point to the existence of an impairment and use various types of evidence to argue that the functional restrictions imposed by that impairment are disabling; rather, the plaintiff

3

must point to medical evidence establishing *all* of the criteria set out in the listing. "An impairment that manifests only some of those criteria, no matter how severely, does not qualify." Sullivan v. Zebley, 493 U.S. 521, 530 (1990). The plaintiff cannot show that s/he "equals" a Listing simply by showing overall functional impact of his condition; "equivalence" is a test used only when the claimant's impairment is unlisted, and it is satisfied only by presenting medical evidence of findings "equal in severity to *all* the criteria for the one most similar impairment." Sullivan v. Zebley, 493 U.S. 521, 531 (1990).

Mr. Durham contends the medical evidence establishes that he satisfied Listing 9.08 (diabetes mellitus), which requires a showing of "neuropathy demonstrated by significant and persistent disorganization of motor function in two extremities resulting in sustained disturbance of gross and dexterous movements, or gait and station." Elaborating on "persistent disorganization of motor function," Listing 11.00 C. notes, "The assessment of impairment depends on the degree of interference with locomotion and/or interference with the use of fingers, hands, and arms." Mr. Durham contends that the severity of his difficulties with his lower extremities is such as to satisfy the Listing requirement. However, not only does the medical evidence, standing alone, fail to establish the required severity, but, as noted by the ALJ, the record includes numerous clinical notations completely at odds with the claim of "significant" and "persistent" problems. For example, Mr. Durham was observed to be able to walk without assistance (Tr. 318, 604), and even reported using walking as his regular exercise (e.g., Tr. 128, 175, 18 ). Accordingly, this claim of error is without merit.

TREATING PHYSICIAN OPINION

Plaintiff next argues that the ALJ failed to accord the appropriate weight to the opinions

of his treating physicians.  The courts have long held that the treating physician – especially one who has seen the patient over a period of time -- is in a unique position to evaluate the functional impact of an impairment on her or his patient, and the law recognizes the importance of that point of view by according deference to the opinions of treating physicians.  In Wilson v. Commissioner, 378 F.3d 541 (6th Cir. 2004), the court again confirmed the weight ordinarily due the opinion of a treating physician.  Furthermore, "in all cases there remains a presumption, albeit a rebuttable one, that the opinion of a treating physician is entitled to great deference," even if that opinion does not qualify for *controlling* weight.   Rogers v. Commissioner of Social Security, 486 F.3d 234, 242 (6th Cir. 2007).  Wilson also underlined the fact that the courts are bound to hold the Commissioner to the requirements of 20 C.F.R. Section 404.1527(d)(2), which calls for the ALJ to state clear reasons for rejecting or for limiting the weight given the opinion of a treating physician.  See also Soc.Sec.Rul. 96-2p.

Dr. Zerga saw Mr. Durham on referral from Dr. Pohl.  In March of 2004,  Dr. Zerga opined that Mr. Durham could sit for no more than ½ hour at a time and for no more than two hours total in an entire work day.  Mr. Zerga also opined that claimant could not stand, walk or drive at all during a work day.  Tr. 183.  Thus, as the ALJ observed, Dr. Zerga's opinion essentially proclaimed Mr. Durham "practically bedridden."  Tr. 549.  Dr. Zerga left blank the section of the form seeking explanation of comments.  Tr. 184.  In order to find the necessary clinical support for Dr. Zerga's extreme opinion, we turn to his treatment records.  The first record is of a visit in October of 2003.  Although the note states, "Mr. Durham returns," implying an earlier visit, the record does not include earlier records.  The October 2003 visit noted a diagnosis of "peripheral neuropathy," but the visit's primary purpose was exploration of

5

possible seizure activity.  The MRI study result was normal.  Tr. 186.  In January of 2004, Dr.

Zerga saw Mr. Durham again.  The patient complained of "increasing upper extremity

complaints."  Nerve conduction studies revealed a mild peripheral neuropathy.  Tr. 185.  Thus,

there is no explanation even in Dr. Zerga's own treatment records for his opinion that Mr.

Durham would have to spend most of every work day lying down.

The Zerga opinion is also at odds with other contemporaneous records.  In December of

2004 (after Dr. Zerga opined in January that his patient could sit a total of two hours a day and

stand, walk or drive a total of zero hours a day), Dr. Pohl formally noted that Mr. Durham could

return to work.  Tr. 367.   Both before and after the Zerga opinion, Mr. Durham reported to Dr.

Pohl that he was exercising by walking 35 minutes at a time, with weekly frequency varying.  Tr.

189, 202, 365.

These inconsistencies between Mr. Durham's self-reports, the medical findings and Dr.

Zerga's opinion were duly noted by the ALJ, and they fully justify the ALJ's decision to give

little weight to Dr. Zerga's extreme opinion.  The Court perceives no error.

## CREDIBILITY ANALYSIS

Finally, Mr. Durham argues that the ALJ erred in conducting his credibility analysis.

After considering the evidence of record, the ALJ found Mr. Durham's statements regarding

intensity, persistence and limiting effects of his symptoms to be "not entirely credible."  Tr. 548.

SSR 96-7p provides instruction on credibility evaluation as follows:

> In general, the extent to which an individual's statements about symptoms can be
> relied upon as probative evidence in determining whether the individual is
> disabled depends on the credibility of the statements.  In basic terms, the
> credibility of an individual's statements about pain or other symptoms and their
> functional effects is the degree to which the statements can be believed and
> accepted as true.  When evaluating the credibility of an individual's statements,

the adjudicator must consider the entire case record and give specific reasons for the weight given to the individual's statements.

20 C.F.R. § 404.1529©) describes the kinds of evidence, including the factors below, that the adjudicator is to consider in addition to the objective medical evidence when assessing the credibility of an individual's statements:

1)        Daily activities;

2)        The location, duration, frequency, and intensity of pain or other symptoms;
3)        Precipitating and aggravating factors;

4)        The type, dosage, effectiveness, and side effects of any medication taken to alleviate your pain or other symptoms;

5)        Treatment, other than medication,  received for relief of pain or other symptoms;

6)        Any measures used to relieve pain or other symptoms (e.g., lying flat on the back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and

7)        Other factors concerning functional limitations and restrictions due to pain or other symptoms.

The ALJ noted Mr. Durham's complaints of pain and mobility difficulties, but noted as well Mr. Durham's reports to his physician regarding decrease in problems.  The ALJ pointed to medical records indicating no decrease in strength, normal gait, and only slight decrease in sensation.  In addition, the ALJ observed that there is nothing in the medical records indicating the need for a cane "until he suddenly appeared with one on November 27, 2007" when reported for a consultant examination.  Tr. 548.  The Court perceives no error in the ALJ's credibility evaluation.

The substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts. An

administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision." Mullen v. Bowen, 800 F.2d 535, 545 (6 th Cir.1986). Significantly, under this standard, this Court is not to resolve conflicts in evidence and may not decide questions of credibility. See  Garner v. Heckler, 745 F.2d 383, 387-88 (6th Cir.1984). As there is no error and substantial evidence supports the factual determinations, this Court must affirm.   An order in conformity has this day entered.